CATHERINE O'BRIEN, PLAINTIFF-RESPONDENT, v. LUD-
WIG BILOW, DEFENDANT-APPELLANT.

Submitted October 28, 1938—Decided January 13, 1939.

For the plaintiff-respondent, *Herr & Heath* (*Ryman Herr*, of counsel).

For the defendant-appellant, *McDonough & McDonough* (*Charles A. Reid, Jr.*, of counsel).

The opinion of the court was delivered by

TRENCHARD, J. Plaintiff-respondent brought suit in ejectment to recover possession of land lying within the limits of the south branch of the Raritan river and a fence which had been erected on the southerly bank of the river and on land either on or adjoining that of the defendant-appellant. Plaintiff claimed title and right of possession based upon a deed for the land to the north of the river and asserts that although her deed does not cover the land in question her grantors, prior to the conveyance to her on September 25th, 1907, were in actual, open, notorious, hostile and adverse possession of the lands, and her and their such possession extends more than thirty years. Under the testimony there is no doubt that the plaintiff and her predecessors in title had erected across the river and along the southerly bank a fence which brought the disputed land into the possession and use of the plaintiff's grantors and plaintiff. The jury found for the plaintiff and defendant appeals.

The defendant first complains that the motion made to strike the complaint should have been granted upon the grounds (a) that it did not appear that the plaintiff and her predecessors in title were in possession for thirty years; but that contention, as we have indicated, is ill-founded in point of fact. Defendant also says that (b) in any event, the plaintiff's and her predecessors' right of possession could not ripen

into title until after sixty years of possession. In other words, he claims that chapter 188 of the act of 1922 (*R. S.* 1937, 2:25-1) upon which plaintiff relies, could not accelerate the time within which a person would be entitled to claim title by adverse possession if part of the time relied upon preceded the passage of the act. But we think that is not so. The act of 1922 declares that "thirty years' actual possession of any real estate excepting woodlands or uncultivated tracts, and sixty years' actual possession of woodlands or uncultivated tracts, uninterruptedly continued by occupancy, descent, conveyance or otherwise, shall, in whatever way or manner such possession might have commenced or have been continued, vest a full and complete right and title in every actual possessor or occupier of such real estate, woodlands or uncultivated tracts, and shall be a good and sufficient bar to all claims that may be made or actions commenced by any person whatsoever for the recovery of any such real estate, woodlands of uncultivated tracts." Now plaintiff's adverse possession commenced in 1897 and therefore matured in 1927, or five years after the enactment of the statute in question. That the legislature could lawfully pass the act is well settled where, as here, the parties interested had a reasonable time after its passage to enforce any rights they might have. *Lapp* v. *Belvedere,* 116 *N. J. L.* 563 ; 8 *Wait's Actions and Defenses,* 570. (c) The defendant further says there was error in the refusal to strike, because it appeared that it was uncultivated land and therefore not within the purview of the act. But that contention is ill founded in point of fact. It appeared that the land was used for the feeding and pasturing of cattle, and was not "uncultivated" land within the meaning of that term as used in the act. (d) So likewise as to the contention that the pleadings failed to show adverse possession. (e) The contention that the pleadings failed to show that the defendant was in possession is ill founded, since the fact was admitted by the answer. *R. S.* 2:51-14.

The real question in this case, as we see it, is whether or not possession of the predecessors in title of the plaintiff-respondent may be tacked on to her possession so as to cover

the required period. Upon this point there seems to be no doubt. In the case of *Colgan* v. *Pellens,* 48 *N. J. L.* 27; *affirmed,* 49 *Id.* 694, it was held that the possession of a predecessor and privy in title of the person presently asserting the right may be tacked on to that person's possession in order to cover the required time. That was also the holding in the case of *Devock* v. *Nealson,* 58 *Id.* 21, where the facts were very much the same as in the present case. There the description of property granted by the deeds did not cover the disputed area, but there was testimony that the predecessors in title of the plaintiff had been in possession for the required number of years, and it was held that possession if uninterrupted inured to the benefit of the grantees in turn. The question in that case was presented in this form: "If one holding the legal paper title to a piece of land, in enclosing it includes within the enclosure a piece of adjoining land, enters into possession of the entire enclosed tract, and then transfers his legal paper title to another who goes into possession of the entire enclosed tract, can the two adverse possessions be tacked?" The court said: "Now, it is perfectly obvious that the deed, followed by possession of the whole tract, is intended to operate as a conveyance of the possession of all within the enclosure. The legal title passes as to so much of the lot as is within the description in the deed; but the deed, aided by the enclosure and the actual transference of possession of the rest as a part of the lot sold, is sufficient evidence of a transference of possession to raise the required privity between them." And that was the rule adopted in *Spottiswoode* v. *Morris & Essex Railroad Co.,* 61 *Id.* 322; *affirmed,* 63 *Id.* 667.

We now proceed to examine the remaining points argued by the defendant-appellant, in so far as they are properly raised.

The next point is that the trial court erred in permitting plaintiff's witness to answer a question put by plaintiff as to what purpose the land adjacent to the fence was used for, and in what condition it was kept. We think there was no error there. The question was proper because a pertinent

inquiry at the trial was whether this was cultivated or uncultivated land.

The next point is that the court erred in refusing to permit plaintiff's witness to answer the question: "Did your father ever make any claim to the land lying on the south bank?" We think this question was objectionable, but that is not all. Substantially the same question was afterwards put to the same witness and was answered, and hence the exclusion complained of was not harmful. *Finkelstein* v. *Geismar*, 91 *N. J. L.* 46; *affirmed*, 92 *Id.* 251.

The next point urged is that it was error to refuse to nonsuit and to direct a verdict for the defendant, on the ground "that plaintiff has not presented a cause of action." We think not. There was ample evidence tending to legally support every essential of plaintiff's cause of action.

The next point is that it was error to sustain the objection to a question which in effect called for the mere conclusion of a lay witness, and of course that was not erroneous.

The next point is that it was error to permit a witness to answer a question as to putting up the fence. Not so. It seems there was no timely objection, and moreover, the question was a mere repetition of other questions theretofore answered without objections when put by the same counsel.

We have ignored many points attempted to be made and argued by the defendant-appellant because on examination we find no exceptions to support them; and the general rule is that no ruling relating to the reception or rejection of evidence will be reviewed unless the record discloses an exception or objection challenging the ruling at the time it was made, in such manner as to fairly apprise the judge that such ruling is to be made a ground of appeal (*Kargman* v. *Carlo*, 85 *N. J. L.* 632); and we are minded to remark that an observance of that rule on the part of counsel would avoid useless labors on appeal.

It is further argued that there was error in the charge of the court. We find none to which a valid exception was taken, and in this connection we remark that it will not avail an appellant in a civil suit to take a general exception

to the charge of the court. *Bennett* v. *Pillion,* 105 *N. J. L.* 359; 144 *Atl. Rep.* 601. In order to have the exception considered on appeal it must appear that the attention of the trial judge was specifically called to the matter challenged as erroneous.

Lastly, complaint is made of the refusal to charge certain requests, to which refusal exceptions were taken.

But upon examination we find that the court in its charge adequately covered them, and the rule is that the trial judge need not adopt either the form, or the words, or the collocation of phrases in which requests to charge are framed; but it is sufficient if he has in his charge correctly and substantially covered the requests; and when he has stated the pertinent legal rule, he may or may not, in his discretion, further elaborate it. *Hughes* v. *Rankin Realty Co.,* 108 *N. J. L.* 485; 158 *Atl. Rep.* 487; *Runyon* v. *Monarch Co.,* 108 *N. J. L.* 489; 158 *Atl. Rep.* 530.

The judgment below will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, CASE, BODINE, DONGES, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 13.

*For reversal*—PARKER, HEHER, JJ. 2.