MUTUAL FINANCE CORPORATION, PLAINTIFF-APPEL-
LANT, v. OLIVER P. DICKERSON, DEFENDANT-RE-
SPONDENT.

Argued May 2 and 3, 1939—Decided July 28, 1939.

Before Justices CASE and HEHER.

For the appellant, *Henry Gottfried* (*Leon Sachs,* of
counsel).

For the respondent, *Coult, Satz & Tomlinson* (*Joseph
Coult* and *Joseph Coult, Jr.,* of counsel).

The opinion of the court was delivered by

Heher, J.  Plaintiff sued upon a promissory note dated February 5th, 1937, made by defendant to one D. Gordon Fichter and endorsed by him to plaintiff for value before maturity.  Concededly, as between the maker and payee, the note was not supported by a valuable consideration.

The District Court judge, sitting without a jury, found that the payee's "title was defective in that the signature of Dickerson was obtained by fraud, and in that Fichter negotiated the instrument in breach of faith;" and the dispositive question is whether there was a tangible basis in the evidence for his further finding that plaintiff "had knowledge of such facts that its action in taking the instrument amounted to bad faith," so as to deprive it of the status of a holder in due course within the intendment of sections 7:2-52, 7:2-55, 7:2-56 and 7:2-57 of the Revised Statutes of 1937.  The judge also found that plaintiff was "without *actual* knowledge of any defect or infirmity in the title of" Fichter; and this finding is not assailed.

We resolve this basic inquiry in the negative.

Plaintiff's business was the financing of sales of automobiles by purchasing from dealers the conditional sales contracts and the accompanying promissory notes made by the purchasers.  Fichter was such a dealer, and had been so engaged for fourteen years.  It was proved that plaintiff purchased from Fichter, for the consideration of $500 actually paid to him, a contract signed by defendant purporting the conditional sale of an automobile to him by Fichter, and the promissory note in suit providing for the installment payment of the ostensible purchase price.  There was in fact no such sale.  As far as Fichter and defendant were concerned, the transaction was merely a colorable device to deceive.  Fichter thereby designed to defraud plaintiff, while defendant testified that, at Fichter's request, he signed the conditional bill of sale, the promissory note, and a "financial statement" or "credit application," all in blank, under these circumstances: "He [Fichter] explained to me that he had to have some cars off the track and he had to have a purchaser for the car

and had to have a contract made out to show somebody that he had a purchaser for that car. He had the car sold that I was supposed to get and as soon as he got the cars off the track and sold them he would tear up my contract and release me."

Seeming to concede that no one circumstance adduced in proof is in itself sufficient to sustain the inference of bad faith, defendant maintains that the cumulative effect of all the circumstances reasonably tends in that direction. The essence of the argument made is that, "during the period when Fichter was dealing with the plaintiff, he had negotiated a great number of transactions similar to the one under consideration, all of which, according to his own testimony, were purely for the purpose of borrowing money;" that the evidence established that, "in one transaction at least, preceding the execution of the note in suit, actual knowledge of the failure of consideration had been brought home to the plaintiff;" and that plaintiff "took no steps to check the delivery of cars, permitted the supposed purchasers to become in arrears without inquiring into the default, received payments on various supposed contracts by way of check from Fichter in lump sums which were allocated to various accounts at his direction, and generally permitted to develop a situation so inconsistent with the ordinary course of business dealing that it admitted of only one explanation," i. e., that "plaintiff was carrying on what was essentially a highly profitable banking business, relying on Fichter's credit and his supposed ability in making sales of automobiles."

We have quoted thus at length from respondent's brief because it is an appraisement revealing the inherent limitations of the proofs relied upon by him as demonstrative of "bad faith." This argument does not take into account the facts that Fichter was an established dealer, and there was nothing in the volume of his business transactions with plaintiff suggesting a fictitious sale of an automobile to defendant to induce the discounting by plaintiff of the note purportedly given for the purchase price. When it is considered that plaintiff ordinarily designed to extend credit on the security

of the chattel, as well as the personal responsibility of the purchaser, the challenged conduct of plaintiff is more reasonably describable as "negligence" to its own injury, rather than "bad faith" exonerating the maker of the note, whose willing participation in the deceit brought the note into being.

Moreover, it places upon the purchaser of a negotiable instrument a burden not contemplated by the statute—one that would tend to impair the integrity of negotiable instruments. Our court of last resort has ruled that, under the cited statutory provisions, "proof of circumstances calculated merely to arouse suspicion will not defeat recovery on a negotiable note taken for value before maturity. Bad faith, *i. e.*, fraud, not merely suspicious circumstances, must be brought home to a holder for value whose rights accrued before maturity, in order to defeat his recovery on a negotiable note upon the ground of fraud in its inception or between the parties to it." *Rice* v. *Barrington*, 75 *N. J. L.* 806. In that case, it was held that a question directed to the plaintiff-holder of the promissory note in suit, as to whether, before its negotiation to him, he had learned that a note previously purchased from the payee had been fraudulently obtained, had been properly overruled on the ground that that "was at most a suspicious circumstance as regards the note in suit." This principle was reaffirmed by the same court in *Davis* v. *Clark*, 85 *N. J. L.* 696. There Mr. Justice Kalisch said: "Suspicious circumstances that would put a man on inquiry at the time" the holder "bought the note * * * would not preclude his right to recover." This seems to be the prevailing rule. 8 *Amer. Jur.* 123.

The judgment is accordingly reversed, and a new trial awarded; costs to abide the event.