## Boswell's Estate.

Argued November 27, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*John B. Gest,* of *Donahue, Irwin, Merritt & Gest,* for appellant.

*Louis Barcroft Runk,* for appellee.

OPINION BY MR. JUSTICE MAXEY, J., January 6, 1941:
This case involves the interpretation of a clause in the will of Mary D. Boswell, deceased. The will was exe-

cuted on March 29, 1892. Testatrix died May 26, 1895. In her will she devised and bequeathed "the remaining one-fourth" of her estate (including specifically certain real estate) to her two sons, William L. Boswell and James I. Boswell, "in trust, nevertheless, to invest the same and to pay the income thereof quarterly to my daughter-in-law, Elizabeth R. Boswell, and her two children, Mary Rose Boswell and John Iverson Boswell, in equal shares, during their lives; at the death of one to pay the income equally to the other two; at the death of two, to pay the survivor the entire income; at the death of all three, to divide the principal into three equal parts, one of which shall be assigned to the estate In Trust for my daughter, Sarah A. Boswell, and one to each of my two sons, William L. Boswell and James I. Boswell, their respective heirs, executors, administrators and assigns; Provided, that if at the time of the decease of either of my said grandchildren, there shall be living husband, wife, child or children of such deceased grandchild, such husband, wife, child or children shall receive the principal of the sum whose interest previously was paid to such decedent." The controversy is on the interpretation of the portion of the will just quoted.

Of the three original life tenants of the trust under this will, the daughter-in-law, Elizabeth R. Boswell, died in 1910. The latter's two children received the income from the trust fund until one of them, Mary Rose Collins, died on July 17, 1939. After her death, the second account of the substituted trustee was filed and at the audit Charles C. Collins, (since deceased) surviving husband of Mary Rose Collins, appeared and claimed one-half of the trust fund. This claim was based on the proviso in the last part of the clause of the will above quoted.

The adjudication of Judge KLEIN of the court below held that this proviso vests one-half of the principal of the trust in Charles C. Collins but that "the vesting of said interest in possession, however, being postponed

until the death of James Boswell." Judge KLEIN held further: "At the death of the said J. Iverson Boswell the fund will be distributable one-half to Charles C. Collins, surviving husband of Mary Rose Collins, and the other one-half will be divided into three equal parts and assigned as directed in the will, unless the said J. Iverson Boswell leaves a wife, child or children, in which event the said one-half will be payable to such wife, child or children, in accordance with the proviso quoted above. The entire fund presently accounted for will therefore be awarded back to the accountant in trust to pay the income therefrom to J. Iverson Boswell for life under the terms and provisions of the will."

Charles C. Collins filed exceptions to the adjudication. The majority of the court, consisting of Judges KLEIN, BOLGER and LADNER (President Judge VAN DUSEN not sitting), in an opinion by Judge LADNER, dismissed the exceptions, saying, inter alia: "She [the testatrix] specifies 'at the death of one, to pay the income equally to the other two. At the death of two, to pay the survivor the entire income.' This necessarily fixes as the duration of the whole trust the life of the last survivor. That the trust is not to end before that time even pro tanto is emphasized by the words that follow, viz.: 'At the death of three, to divide the principal into three equal parts.' "

Judge STEARNE of the court below in his dissenting opinion, concurred in by Judge SINKLER, said: "Testatrix contemplated the decease of her two named grandchildren, *with and without* surviving 'husband, wife, child or children.' Should either grandchild die without leaving (a husband) the income passes to the other life tenants until the death of the survivor, when the principal is given to testatrix's children. However, if such grandchild leaves a (husband), then such husband 'shall receive the principal of the sum whose interest previously was paid to such decedent.' A grandchild has died, and did leave a husband. In my opinion, the husband,

in most clear and unequivocal language, is given the principal upon which the grandchild enjoyed the income."

It is clear to us that when the testatrix wrote paragraph four of her will, she had in mind two possibilities, to wit: (1) that neither of her grandchildren would ever marry, and (2) that one or both of them would marry. Paragraph four, down to the proviso, prescribed what would happen to the trust fund if neither of the grandchildren married. It is set forth that in that contingency and upon the death of any of the three beneficiaries of the trust fund, i.e., the daughter-in-law and her two children, the trust would remain intact and the survivors should receive the entire income from it and at the death of all three (the two grandchildren dying unmarried) the principal should be "divided" "into three equal parts," one to be added to the trust estate of her daughter Sarah and one part should go to each of her two sons, their heirs, etc. *The proviso was obviously written to provide another disposition of the trust fund should either of the grandchildren die leaving a spouse or issue. In that event,* it was provided that such spouse or issue "shall receive the principal of the sum whose interest was paid to such decedent." In other words, while Mary Rose Collins should have the stipulated share of the interest in the trust fund while she lived, when she died leaving a husband, Charles C. Collins (as she did), *he* "shall receive the principal of the sum whose interest," i.e., the interest *on which,* had been paid to his wife (testatrix's granddaughter) while she lived. The testatrix in this sentence distinguished between principal and interest. "The duration of the trust was the life of the last survivor" *only if the grandchildren remained unmarried,* that is, in the status each one was when the will went into effect. When either or both grandchildren married and one of those grandchildren died leaving a spouse or child or children, that spouse

or child or children *took immediately* the principal of the sum whose interest previously had been paid to such decedent.

This interpretation of the will impresses us as not only being required by the text but as also in harmony with what would normally be the desire of a testatrix in respect to her grandchildren. Under the interpretation contended for by appellee, if grandchild A died leaving a spouse or a child, grandchild B would receive the *entire* income from the trust fund as long as she lived while the spouse or the child (as the case might be) of grandchild A would receive nothing until grandchild B died. It is not to be expected that a testator would thus favor one grandchild over another grandchild's surviving spouse or children. If testatrix was sufficiently solicitous of the welfare of any grandchild's spouse or children to give *him or them a part of the corpus of the trust fund after the death of all her grandchildren* (as appellee concedes) it seems reasonable to believe that she would want them to have some enjoyment of a portion of that corpus while he or they *and another grandchild* were living. If testatrix's intention was what appellee contends it was, she could easily have said after the word "decedent" at the end of the quoted clause: *"but only after the death of the other grandchild."*

The conclusion we have reached is in accord with the principles of law and interpretation set forth in *Tripp's Est.*, 202 Pa. 260, 51 A. 983, and *Card's Est. (No. 1)*, 337 Pa. 69, 9 A. (2d) 552.

The decree is reversed; costs to be paid by the estate.