WILLIAM G. DAVIS, PLAINTIFF-RESPONDENT, v. SAMUEL CLARK, DEFENDANT-APPELLANT.

Submitted December 4, 1913—Decided March 16, 1914.

Under Negotiable Instruments act (3 *Comp. Stat., p.* 3741, §§ 56, 57), declaring that to constitute notice of the infirmity in a negotiable instrument or defect in title of the person negotiating the same, the person to whom it is negotiated must have actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounts to bad faith, and that a holder in due course holds the instrument free from any defect of title of prior parties, and free from defences available to prior parties among themselves—*Held*, that a recovery by a holder for value whose rights accrued before maturity of a note procured by the payee's fraud cannot be defeated because there were circumstances sufficient to put him on inquiry, but not to make his taking of the note fraudulent.

On error to the Supreme Court, Essex Circuit Court.

For the appellant, *Jerome T. Congleton* and *Frank E. Bradner.*

For the respondent, *Lintott, Kahrs & Young* and *John R. Hardin.*

The opinion of the court was delivered by

KALISCH, J. The judgment challenged by the appellant was given on a verdict directed against him for plaintiff in the court below. The action was based on a promissory note for $10,000, under date of December 20th, 1911, made by Samuel Clark, the appellant, to the order of William Rotter and indorsed by the latter to William R. S. Davis, the respondent, who gave $9,100 value for it. The sole inquiry raised by the appeal is were there facts bearing on any question that would defeat the respondent's right to recover. The facts developed on the trial showed that the appellant bought two hundred and fifty shares of stock, in the Peoples Talking Machine Company, having a par value of $25,000 for $5,000. Rotter, the payee of the note mentioned, and one Meiselbach were stockholders in the company. Rotter was an inventor and Meiselbach a practical manufacturer, and both were relied on by the other stockholders in the company to manage and carry on the business. In the month of April, 1911, at a meeting of stockholders, Rotter stated, in the presence of all the stockholders, including the respondent, who was also a stockholder, that he, Rotter, had a position offered him by a rival company at a much larger salary than he was receiving and that he had accepted it and therefore was going to leave, whereupon Meiselbach stated that if Rotter left he would leave. The stockholders endeavored to induce Rotter to remain and he then suggested that he would buy their stock, and it was finally agreed to sell him their stock for forty cents on the dollar. The appellant received $10,000 from Rotter for his two hundred and fifty shares, claiming that he was induced to sell through the representations made by Rotter and Meiselbach. Later, in December, 1911, Rotter sold back to the appellant one hundred shares of the stock for $10,000 for which appellant paid with the note in controversy. On the 18th day of January, 1912, respondent purchased the note of Rotter, giving him therefor $4,000 in cash, capital stock of the Peoples Talking Machine Company having a par value of $5,000, respondent's note for $900 and $100 were allowed for dis-

counting the note. The $900 note was not paid and the plaintiff was permitted to recover the amount the note actually cost him, which was $9,100. The appellant claimed as a defence against the payment of the note that he was induced to sell out his two hundred and fifty shares to Rotter in consequence of what Rotter and Meiselbach represented at the stockholders' meeting in April, 1911, which representations he declares were false. But even if this be conceded, there was no perceptible connection between the appellant's selling out his two hundred and fifty shares to Rotter in April, 1911, and his repurchasing one hundred shares of him in December, 1911. The further claim of the appellant is that when Rotter sold back to him one hundred shares of this stock he then represented that one Whitehead had invested $10,000 in the company, and that he was about to become its president and that the company was in good shape, which representations he says were untrue. But the appellant manifestly did not rely on the representations made. He himself says that the fraud of which he complains is the fraud practiced upon him in April, by which he was induced to sell out his stock, but this, of course, had nothing to do with the repurchase of it eight months later.

And it further appears that abount ten days after the respondent acquired the note, the appellant called upon him and made a proposal to pay $7,500 in cash when the note came due and to renew it for $2,500, which proposal the appellant says the respondent agreed to. In the meantime, however, appellant says that Rotter confessed to him the deceit practiced upon appellant in April, 1911, through which he was induced to sell out his stock to Rotter, and because of that deceit and that only, he told respondent that he would refuse to pay the note.

Even if it were assumed that the note in controversy is tainted with fraud by reason of the representations made by Rotter to the appellant when he sold to him the one hundred shares of stock, and for that reason a jury question was raised as between the original parties to the note, that does not militate against respondent being a *bona fide* holder in due

course. There was no testimony at the trial that tended to show that respondent had any knowledge of any of the facts of the transaction in December between appellant and Rotter at the time he purchased the note from Rotter. But even if it had appeared that there were suspicious circumstances that would put a man on inquiry at the time respondent bought the note it would not preclude his right to recover. The latest pronouncement of the legal rule governing this topic was made in *Rice* v. *Barrington,* 46 *Vroom* 806, decided by this court after the enactment of sections 56 and 57 of the Negotiable Instruments act (3 *Comp. Stat., p.* 3741), dealing with the subject as to what shall constitute notice of infirmity or defect in title and as to the rights of a holder in due course of a negotiable instrument under that act, where Mr. Justice Garrison, speaking for the court (at *p.* 807), said: "Bad faith, *i. e.,* fraud, not merely suspicious circumstances, must be brought home to a holder for value whose rights accrued before maturity, in order to defeat his recovery on a negotiable note upon the ground of fraud in its inception or between the parties to it."

As the defence failed to adduce any testimony tending to establish that the alleged fraud charged against Rotter was brought home to the respondent who was a holder for value whose rights accrued before maturity, no jury question was presented and therefore the court very properly directed a verdict for the plaintiff.

Judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, HEPPENHEIMER, JJ. 13.

*For reversal*—None.