ALROPA CORPORATION v. KING'S ESTATE.

1. CONTRACTS—FLORIDA—CONTROLLING LAW.

Land contract and negotiable promissory notes signed and to be performed in Florida are Florida contracts and, as such, are controlled by the laws of that State.

2. BILLS AND NOTES—BONA FIDE HOLDER FOR VALUE BEFORE MATURITY—CONSIDERATION—EXECUTORY CONTRACTS.

Under Florida law, knowledge by purchaser of a note that consideration therefor was an executory contract does not prevent him from becoming a *bona fide* holder for value before maturity unless there has been a breach of such contract brought to his knowledge (Comp. Gen. Laws Florida 1927, § 6817).

3. SAME—CONSIDERATION—EXECUTORY CONTRACTS.

Fact that consideration of a negotiable promissory note is recited therein to be an executory contract does not put purchaser of note under duty of inquiring whether counterpromise, constituting the consideration, has or has not been performed.

4. SAME—PLEDGES—HOLDER IN DUE COURSE—EXECUTORY LAND CONTRACTS—NONPERFORMANCE.

Bank which acquired, as pledgee of payee, notes governed by Florida law and given for purchase of land pursuant to contract which required vendor-payee to perform certain development work that was never completed, *held*, holder in due course where at time of pledge there was no indication that work would not be performed, hence pledgee's transferee which acquired notes for a valuable consideration is entitled to recover thereon.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted October 16, 1936. (Docket No. 90, Calendar No. 39,052.) Decided April 22, 1937. Rehearing denied May 21, 1937.

In the matter of the estate of Merrill B. King, deceased. The Alropa Corporation, a Florida corporation, filed its claim in the probate court for sums

due on two promissory notes. From order of probate court disallowing claim, plaintiff appealed to circuit court. Verdict and judgment for defendant. Plaintiff appeals. Reversed and judgment ordered entered for plaintiff.

*Mason, Sharpe & Stratton,* for plaintiff.

*Howard, Howard & Howard,* for defendant.

SHARPE, J.  On March 6, 1926, the deceased, Merrill B. King, and wife contracted to purchase certain real estate located in the State of Florida, the purchase price of which was $6,500, payable 25 per cent. down and the balance in six promissory notes for $812.50 each, payable one every six months. Note one and the first instalment of interest on all notes became due September 6, 1926. The notes are negotiable instruments and contain no reference to the purchase of land from the Shoreland Company or the land contract that required certain development work to be done by the Shoreland Company which work has never been completed.

Sometime prior to June 19, 1926, the notes in question, numbers two and three, were negotiated by the Shoreland Company to the Miami Bank & Trust Company as a part of certain collateral security given for a loan made by that bank to the Shoreland Company. On June 19, 1926, the Miami Bank & Trust Company merged with the City National Bank & Trust Company and the Shoreland Company note together with the collateral including the notes in question became the property of the City National Bank & Trust Company.

On October 28, 1926, the Shoreland Company note, then held by the City National Bank & Trust

Company, was renewed for a reduced amount. This note was later acquired by the Tarrier Company. In September, 1932, the King notes were purchased from the Tarrier Company by the Burns Mortgage Company and in May, 1933, this latter company sold the notes to plaintiff herein.

The record also shows that the Shoreland Company never developed the property in accordance with its agreement although some development work was going on at the time of the loan made by the Miami Bank & Trust Company and the deposit of the King notes as collateral. The Shoreland Company went into bankruptcy October 26, 1928. Plaintiff filed a claim against the estate of Merrill B. King and upon appeal to the circuit court the cause was tried before a jury which found in favor of the defendant estate. Plaintiff made a motion for a directed verdict at the close of defendant's testimony and the same was denied by the trial court.

Plaintiff appeals and contends that it is a *bona fide* owner and holder in due course through a previous owner and holder in due course, while defendant estate claims that plaintiff is not a holder and owner in due course as said notes are open to the defense of want of consideration.

At the outset we have in mind that the land contract and notes were signed in Florida and were to be performed in Florida. Consequently they are Florida contracts and, as such, are controlled by the laws of that State. The State of Florida has adopted the uniform negotiable instruments law. Comp. Gen. Laws of Florida 1927, § 6817, which provides:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. But a holder who derives his title through a holder in

due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter.''

In the opinion written by Mr. Justice Davis in *Robertson* v. *Northern Motor Securities Co.*, 105 Fla. 644 (142 South. 226), he cites *Jockmus* v. *Claussen & Knight, Inc.*, 47 Fed. (2d) 766, in which that court says: ''It is a well established rule that knowledge by the purchaser of a note that the consideration therefor was an executory contract does not prevent him from becoming a *bona fide* holder for value before maturity, unless there has been a breach of the contract to the knowledge of such purchaser'' and quotes from Bigelow on Bills, Notes and Checks (3d Ed.), § 482:

'' 'It is an established principle in the law of negotiable instruments that the recital of the consideration for the instrument, even though this may indicate an executory undertaking on the part of the payee, not only does not affect the negotiability of the instrument, but does not put upon the purchaser the duty to inquire whether the counterpromise constituting the consideration has or has not been performed. Such a recital is at best but the suggestion of a potential equity, that is, if the consideration recited has failed or should fail, an equity will result in favor of the maker. Such a suggestion, however, does not raise to the level of notice, nor put the purchaser on inquiry.' ''

In the case at bar, the time at which the Shoreland Company disposed of the notes in question is of primary importance. If they were pledged as collateral security to the Miami Bank & Trust Company sometime prior to June 19, 1926, as contended by plaintiff, then from the evidence submitted in this

cause, the Miami bank was a holder of the notes in due course; but, if the notes were retained by the Shoreland Company until October 28, 1926, and then disposed of to the City National Bank & Trust Company, there may be a jury question as to whether or not this latter bank and trust company became a holder of the notes in due course.

In this cause the notes were given in connection with a good faith transaction involving the purchase and sale of Florida real estate. On June 19, 1926, there had been no breach of the executory land contract, none of the notes were in default as to either principal or interest, nor was there anything to indicate that development operations would not be continued in full compliance with the contract.

The Miami Bank & Trust Company became the pledgee of the notes in question prior to June 19, 1926. The testimony of Ray M. Earnest, an employee of the City National Bank & Trust Company and later connected with the Tarrier Company, is positive and is as follows:

"The M. B. King notes which were a part of the Shoreland collateral were at all times from June 19, 1926 to September, 1932, in my custody. * * *

"These notes which bear the indorsement of the Shoreland Company were actually indorsed by the Shoreland Company prior to the time that they were taken over by the City National Bank & Trust Company of Miami, which was on June 19, 1926. * * *

"I am familiar with the note given by the Shoreland Company to the Miami Bank & Trust Company.

"*Q.* And is that the same note which was later transferred from the Miami Bank & Trust Company to the City National Bank & Trust Company of Miami?

"*A.* I will answer it in this way; the Miami Bank & Trust Company note that was taken over by the City National Bank & Trust Company was renewed about October, 1926. The same collateral and all of the assets pledged to secure the note originally given the Miami Bank & Trust Company still remained in the City National Bank & Trust Company. There was no change in the status. * * *

"The collateral consisted of various notes having been assigned to the Miami Bank & Trust Company by the Shoreland Company aggregating, as I recall, around $100,000. They were indorsed by the Shoreland Company, blank indorsements. I think there was nothing else besides the notes that was put up as collateral. I think that was the only security they had."

Nor is this testimony disputed by R. M. Price, vice-president and director of the Miami bank up until the merger in June, 1926, and defendant's witness who testified as follows:

"I remember there was such a loan as having been made by the Miami Bank & Trust Company to the Shoreland Company during the latter part of 1925 or 1926. As I remember, the collateral that was pledged to secure that loan was composed of purchase money notes on property that they were developing at that time. At that time I couldn't say that I was familiar with all of the property the Shoreland Company was developing. I was familiar with the tract known as Miami Shores Island. At the time this loan was made, I think that property was in the course of construction. * * *

"When the Miami Bank & Trust Company had its merger, I think the title of the bank with which they merged was The City National Bank & Trust Company. At the time of the merger this new bank came into possession of this note of the Shoreland Company."

We must, therefore, conclude that the Miami Bank & Trust Company became holders in due course of the King notes and plaintiff having since acquired these notes for a valuable consideration is entitled to recover.

The judgment of the lower court is set aside and that court is directed to enter a judgment for plaintiff in the principal sum of $1,625 and interest computed in accordance with the terms of the notes. Plaintiff may recover costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, and BUSHNELL, JJ., concurred. TOY, J., took no part in this decision. POTTER, J., did not sit.