42 N.J. Super. 159 (1956)
126 A.2d 53
WILFRED BOULEY, PLAINTIFF-APPELLANT,
v.
BOROUGH OF BRADLEY BEACH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 8, 1956.
Decided October 19, 1956.
*161 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Samuel Y. Hampton argued the cause for appellant (Messrs. Herbert & Isherwood, attorneys; Mr. J. Stanley Herbert, of counsel).
Mr. Irving E. Keith argued the cause for respondent.
*162 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from an order of the Superior Court, Law Division, dismissing his complaint and entering summary judgment in favor of defendant in an action in lieu of prerogative writs challenging his dismissal from the police force of the Borough of Bradley Beach, and seeking reinstatement to the force and payment of his regular salary from the date of his dismissal to the date of his reinstatement.
The complaint alleged merely that plaintiff was appointed to the police force on June 14, 1954, from which time until February 1, 1956 he duly performed all of the duties required of him as patrolman; that on January 24, 1956 the board of commissioners adopted a resolution dismissing him as a member of the police department from and after February 1, 1956; and that his dismissal on that date was improper, unwarranted, illegal and contrary to the statutes of New Jersey.
Upon motion of defendant the Law Division ordered plaintiff to serve and file a more definite statement, R.R. 4:12-5. He did, charging that (1) his dismissal was illegal and contrary to R.S. 40:47-5  which provides that members of a municipal police department shall hold their offices and continue in their respective employment during good behavior, efficiency and residence in the municipality  in that he was dismissed for none of these reasons; (2) the dismissal was illegal and contrary to R.S. 40:47-6, as amended  which provides that no person shall be removed from office or employment in any municipal police department for political reasons or for any cause other than incapacity, misconduct, non-residence, or disobedience of police rules and regulations, and that such removal shall be for just cause only, after written charges preferred and served, and after hearing  in that no charges were preferred or hearing held, and the dismissal was for none of the stated reasons; (3) plaintiff being an honorably discharged veteran, his dismissal was contrary to the provisions of R.S. 38:16-1, as amended, in that he was dismissed without good cause and without a *163 fair and impartial hearing first being had; (4) the dismissal was for the purpose of providing for the reinstatement of one Trimpi (a former member of the police department who retired in 1952 because of permanent physical disability and who, upon his own application, was reinstated in December 1955), and was illegal and contrary to R.S. 43:16-2, as amended, which provides that a person may be reinstated to the police department by reason of recovery from disability if any position be available, in that there was no position available that would permit of Trimpi's reinstatement.
Having thus been informed of the precise nature of plaintiff's claim, defendant moved for an order dismissing the complaint and for summary judgment in its favor, upon the ground that the complaint failed to state a claim upon which relief could be granted. Attached to the notice of motion were the affidavits of the three members of the borough board of commissioners. These affidavits, practically identical in content, stated that prior to September 13, 1949 the police department consisted of 11 regular members; that subsequent to that date, by reason of a public referendum establishing a 40-hour work week, the membership was increased to 13; that Police Lieutenant Trimpi retired from the department on disability pension on July 1, 1952 and Police Captain McGarvey retired for years of service on April 27, 1954; that thereafter the department continued with 11 regular members and two special officers (plaintiff and one Rumsey); that in June 1954 Rumsey was appointed a regular member of the force and subsequently, on June 14, 1954, plaintiff was similarly appointed, thus making plaintiff the last man appointed to the regular police force; that Trimpi requested an examination by the Consolidated Police and Firemen's Pension Fund Commission which, after medical examination, found that he had recovered from his disability and so certified to the board of commissioners; that Trimpi then applied for reinstatement as a member of the police department, and on December 20, 1955 the board of commissioners by resolution reinstated him as lieutenant, effective December 28, 1955; that early in January 1956 *164 the board of commissioners, in considering the 1956 budget, concluded it was necessary to reduce the budget insofar as possible; that the Director of the Department of Public Safety advised that in his opinion the police department could be run efficiently with a 13-man force, as before, and recommended that for economy reasons the force be reduced to 13 men, with resultant savings of $4,774; that on January 24, 1956 the board of commissioners adopted a resolution reducing the force to 13 members and dismissing plaintiff, effective February 1, 1956, because he was the last person appointed; and, finally, that since the last mentioned date the department had been operating in an efficient manner with 13 regular men.
The resolution dismissing plaintiff recites that "for an efficient and economical administration, a Police Department of thirteen (13) regular members is sufficient and adequate for the needs of the community," and that "good government dictates that the said Police Department shall be reduced to thirteen (13) regular members, for the purpose of economy, in the interests of efficiency and for the betterment of the public service."
Plaintiff filed a responsive affidavit denying he was dismissed for reasons of economy and efficiency and stated that the question of dismissal for the reasons alleged "involves the good faith" of the board of commissioners and entitled him to a full hearing. The affidavit points out that by referendum at the November 7, 1955 election, the electorate voted in favor of a 15% increase in police salaries; that although Trimpi's salary at the time of his retirement in 1952 was only $3,750, an ordinance was adopted at about the time of his reinstatement fixing the salary of police lieutenant at $5,200; that the salaries of other borough employees had been increased 7 1/2% on January 1, 1956 on the board's own motion; that the 1956 budget provided for increased salaries and wages for various municipal officers and employees, which are detailed, clearly indicating that economy and efficiency were not the motivating factors for plaintiff's dismissal; that although prior to plaintiff's dismissal *165 police shifts were rotated every few weeks, since February 1, 1956 members of the police department were obliged to continue working on night shifts for weeks at a time, without rotation, because of Lieutenant Trimpi's failure to serve on certain night shifts. In his affidavit plaintiff again asserts his rights under N.J.S.A. 40:47-5, 40:47-6 and 38:16-1, and claims that the facts being in dispute, defendant is not entitled to a summary judgment as a matter of law.
In granting summary judgment, the Law Division judge held: (1) a governing body may, "for reasons of economy, and as long as it acts in good faith," reduce the police force, in which event it is bound to dismiss the person or persons most recently employed, citing R.S. 40:11-10; (2) the statutes on which plaintiff relies do not protect a police officer where the governing body, "for reasons of economy and acting in good faith," decides to reduce the police force; (3) where a police officer has retired on a disability pension and is found to have sufficiently recovered from his disability as to permit his resuming work, the governing body, upon his application, is under a duty to reinstate him, and such reinstatement is not a new appointment; and (4) the action of the governing body in reducing the police force on the ground of economy is presumed to have been taken in good faith, and the burden of proving the contrary rests upon petitioner. The judge also found that neither the complaint, nor plaintiff's more definite statement, nor his answering affidavits charged bad faith on the part of the board of commissioners, and he concluded that the action of the board in reducing the police force from 14 to 13 was taken in good faith and constituted a legitimate exercise of municipal power. There being no genuine issue as to any material fact, he granted summary judgment of dismissal.
The right of the governing body of a municipality to reduce the personnel of the police department was recognized by the Legislature in the enactment of L. 1933, c. 148 (R.S. 40:47-11). See, also, R.S. 40:11-10. The 1933 *166 act provided that when the governing body, for reasons of economy, decreases the number of policemen, any policeman so removed shall be carried on a special list and if any new appointments are made to the police department, such policeman shall be appointed thereto before any other person. The resolution dismissing plaintiff placed him on such a list.
At the oral argument it was revealed that since the filing of the briefs one of the members of the borough police department had died. The Director of Public Safety thereupon offered plaintiff an appointment as a regular member of the department, to bring it to full strength. An exchange of correspondence between the director and plaintiff's attorney ensued. It need not be detailed because counsel informed the court that plaintiff does not want the proffered position, but presses his contention that his dismissal was illegal and he is therefore entitled to recover back salary for the period of the dismissal, pursuant to N.J.S.A. 40:46-34.
Both sides concede that a municipality may terminate the services of an employee for reasons of economy or efficiency, provided that the dismissal is in good faith. Salisky v. City of Garfield, 131 N.J.L. 80 (Sup. Ct. 1943); Ziegler v. City of Hackensack, 113 N.J.L. 215 (Sup. Ct. 1934); Reck v. Board of Commissioners of North Bergen, 10 N.J. Misc. 962 (Sup. Ct. 1932), affirmed 110 N.J.L. 173 (E. & A. 1933).
Defendant contends that plaintiff does not charge bad faith on the part of the board of commissioners, thereby echoing the finding of the Law Division judge. Although plaintiff did not specifically use the words "bad faith," his affidavit in opposition to the motion for summary judgment clearly raised the issue of good faith.
We have set out in some detail the allegations of plaintiff's more definite statement and of the affidavits filed on the motion for summary judgment, not only to expose the facts fully, but to reveal the doubt which clearly arises as to whether plaintiff's dismissal was for the purpose of making room for Trimpi rather than for reasons of economy *167 and efficiency. The commissioners had reinstated Trimpi as a police lieutenant only a month before plaintiff's discharge. This they were legally warranted in doing only if "his usual duty or any other available duty in the department" was "available." N.J.S.A. 43:16-2. (Here we note, in passing, that the Borough of Bradley Beach has no modern ordinance creating a police department or setting up the position of police lieutenant. Its police department operates under an ordinance of relatively ancient vintage, providing for "chancemen" to attend the law enforcement needs of the municipality. Under R.S. 40:48-1 a municipal office or position, if not created by statute, can come into being only by ordinance of the local governing body. Handlon v. Town of Belleville, 4 N.J. 99, 108 (1950)). There is a real question as to whether there was an "available" position for Trimpi if the municipality needed only 13 men  a police force that had proved sufficient for a number of years  Trimpi's reinstatement making him the fourteenth. He chose to come back on the force after the electorate had voted an increase in police salaries and at a time when the board of commissioners had raised the salary for police lieutenant from $3,750 to $5,200. We do not view the statute as contemplating the removal of a police officer from the regular force in order to make a place available for a former pensioner who seeks reinstatement.
We also have the fact that although the commissioners, in preparing the borough budget for 1956, considered it necessary to reduce it as much as possible, they nonetheless voluntarily granted salary increases to a large number of employees. Excluding the increases given to members of the police force, these totaled $12,093, on the basis of the figures (not denied or rebutted) supplied in plaintiff's answering affidavit.
Summary judgment may be rendered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show palpably that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." *168 R.R. 4:58-3. The burden is on the moving party to exclude all reasonable doubt as to the existence of any genuine issue of material fact. All inferences of doubt are drawn against the movant in favor of the party opposing the motion; the papers supporting the motion are closely scrutinized and the opposing papers indulgently treated. Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954). A motion for summary judgment should be granted only with much caution. Miller v. Atlantic Casualty Insurance Co., 16 N.J. Super. 531, 534 (Law Div. 1951). Such a motion should not be used for a trial of disputed facts upon affidavits. Bickwit v. Hammes, 34 N.J. Super. 568, 573 (Ch. Div. 1955). In C.B. Snyder Realty Co. v. National Newark & Essex Banking Co., 14 N.J. 146, 155 (1953), the court quoted with approval the language of Mayflower Industries v. Thor Corp., 15 N.J. Super. 139, 155-157 (Ch. Div. 1951), affirmed o.b., 9 N.J. 605 (1952), where it was said that a motion for summary judgment "cannot be decided on the affidavits of the parties where the facts are in dispute or where conflicting factual inferences may be drawn from them," and that such affidavits are of value only when they indicate the non-existence of factual issues and not when they attempt to resolve them in favor of one of the parties.
The pleadings and affidavits here did not exclude reasonable doubt as to the existence of a genuine issue of material fact on the questions of (1) whether Trimpi was reinstated to an "available" position under N.J.S.A. 43:16-2 and, more significantly, (2) whether the board of commissioners acted in good faith in dismissing plaintiff for the alleged reasons of economy and efficiency. As to the latter, we were reminded in Judson that "in any case where the subjective elements of willfulness, intent or good faith of the moving party are material to the claim or defense of the opposing party, a conclusion from papers alone that palpably there exists no genuine issue of material fact will ordinarily be very difficult to sustain." 17 N.J. 67, at page 76.
*169 Accordingly, we hold that the entry of summary judgment by the Law Division was error, and there should be a reversal in order that the matters in issue may be resolved at a plenary hearing.