68 N.J. Super. 18 (1961)
171 A.2d 321
NEW JERSEY MORTGAGE AND INVESTMENT CORP., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
ALBERT A. CALVETTI AND MARY CALVETTI, DEFENDANTS-APPELLANTS,
v.
UNITED ALUMINUM PRODUCTS, INC., A BODY CORPORATE, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued April 10, 1961.
Decided May 25, 1961.
*22 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Albert L. Cohn argued the cause for defendants-appellants (Messrs. David & Albert L. Cohn, attorneys; Mr. Daniel Crystal on the brief).
Mr. William Furst argued the cause for plaintiff-respondent (Mr. Furst, attorney; Mr. Leonard Rosenstein, on the brief).
*23 The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal by Albert A. Calvetti and his wife, Mary Calvetti, co-makers of a promissory note, from summary judgment entered in favor of New Jersey Mortgage and Investment Corp. (New Jersey Mortgage) as holder in due course of that note. The appellants challenge the propriety of the entry of judgment upon pleadings, affidavits, and answers to interrogatories, wherein, they maintain, genuine issues of material fact were presented.
The note, in the face amount of $1,208.82, is dated June 15, 1959 and was given in connection with a contract between the Calvettis and United Aluminum Products, Inc. (United) for the installation of aluminum siding on the former's Paterson home. The instrument was sold for $969 by United to New Jersey Mortgage on June 16, 1959, and the latter, unable to obtain payment from the Calvettis, instituted this action on the note.
Defendants answered by denying that plaintiff was a holder in due course of the note. Their precise contention was that New Jersey Mortgage had knowledge of a defect or infirmity in the instrument at the time of receiving it from United. They asserted that the note had been executed pursuant to a written contract of June 14, 1959 for aluminum siding; that the contract clearly provided that defendants would get 2% off the contract price if they paid cash, and that they orally agreed, accordingly, with United's representative, that they would sign a blank note which would be held by United pending determination by them as to whether or not they would pay in cash or not; that the instrument was incomplete in material respects, including the amount due; that delivery of the note was made on the express condition that United would hold the instrument pending acceptance by defendants of the installation work and that "plaintiff received the said note knowing of the conditional delivery thereof"; that United breached its contract by performing its work in an incompetent, negligent, and careless manner and not to the satisfaction of defendants, *24 and that the latter had notified the payee that the contract was cancelled. Defendants also pleaded, as a separate defense, that the note was actually signed on Sunday, June 14, 1959, in contravention of N.J.S. 2A:171-1.
Concurrent with their answer, the Calvettis joined United as a third-party defendant, demanding that the contractor be held liable to defendants for any judgment on the note in favor of New Jersey Mortgage. United's answer denied both the conditional nature of the note and the inadequacy of its installation performance.
The attainment of the status of holder in due course presumes compliance with the statutory conditions set forth in R.S. 7:2-52. There is no real dispute that plaintiff purchased the note for value, that the instrument was complete and regular upon its face, and that plaintiff became the holder before the note (payable in monthly installments) was overdue and was without notice that it had been previously dishonored. The remaining and central question therefore is: Does a genuine issue of fact exist as to whether New Jersey Mortgage took the instrument without notice, at the time of negotiation, "of any infirmity in the instrument or defect in the title of the person negotiating it"?
Summary judgment procedure, while invaluable as a means of expediting judicial administration, Broderick Wood Products Co. v. United States, 195 F.2d 433, 435-36 (10 Cir. 1952), as well as discouraging the practice of coercive settlement of an otherwise worthless claim by the threat of drawn-out trial proceedings, Altman v. Curtiss-Wright Corporation, 124 F.2d 177, 180 (2 Cir. 1941), is to be utilized with the utmost caution and never as a vehicle for judicial fact-finding by means of a choice between opposing affidavits. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73-75 (1954); Devlin v. Surgent, 18 N.J. 148, 154 (1955); Frank Rizzo, Inc. v. Alatsas, 27 N.J. 400, 405 (1958); Bouley v. Borough of Bradley Beach, 42 N.J. Super. 159, 167-68 (App. Div. 1956); Mango v. Brodsko, 32 N.J. Super. 143 (Ch. Div. 1954). *25 Thus, all doubtful inferences are to be drawn against the movant in favor of the opponent of the motion, Judson v. Peoples Bank & Trust Co. of Westfield, supra, 17 N.J., at p. 75, Bouley v. Borough of Bradley Beach, supra, 42 N.J. Super., at p. 168, although, on the other hand, mere allegations in the pleadings without affidavit or other evidentiary support may not prevent the rendering of the judgment. Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J. Super. 369, 383 (App. Div. 1960). The prevailing standard is most precisely articulated by the rule establishing it, namely, R.R. 4:58-3, providing that "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show palpably that there is no genuine issue as to any material fact challenged * * * the moving party is entitled to a judgment or order as a matter of law."
Clearly a number of facts have been placed in issue by the parties in their pleadings and supportive papers, which include answers by both United and New Jersey Mortgage to interrogatories propounded by defendants. The inquiry is whether these issues are "genuine" and "material" to defendants' liability on the note. The Calvettis concede that their allegations of Sunday execution, failure of consideration, and conditional delivery are at best personal defenses, but they maintain that the stripping of plaintiff's armor as a holder in due course would subject it to these defenses. This is of course an accurate rephrasing of the mandate of R.S. 7:2-58, to the effect that "[i]n the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable." See New Jersey, Study of Uniform Commercial Code (Nov. 1960), §§ 3-201, 3-306.
Scrutinizing the moving papers, we note defendants' affirmation that "the plaintiff received an incomplete document and with knowledge that it had been delivered only conditionally and upon terms which were not properly met by the payee of the purported note"; that "a note was received by the plaintiff under circumstances where it knew, or was *26 chargeable with notice, that this indorsement [a form warranty on the back of the note attesting that the work had been properly competed] was false"; and that the affidavits and answers to interrogatories of United and New Jersey Mortgage are contradictory in certain pertinent respects and raise "a factual controversy of material importance." Plaintiff, through its secretary-treasurer, Edward Baime, averred that when the note was negotiated to it, the instrument was "fully complete and regular on its face in all material particulars including the date and amount due"; that it had no notice that, as alleged, the instrument had been delivered only conditionally and upon terms not properly met by the payee; and that it actually had no knowledge of the terms of the contract at the time of negotiation of the note.
Certain elemental principles may here be stated, for the purpose of defining the perimeter of the present inquiry in terms of materiality. The essential issue which defendants claim to be genuinely in dispute is whether or not plaintiff had notice of the defective (conditional) nature of the instrument. The elements comprising notice in this context are basically as defined in R.S. 7:2-56:
"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."
New Jersey has decisively aligned itself with those jurisdictions which follow the "white heart" or "subjective" test of good faith. See New Jersey, Study of Uniform Commercial Code, supra, § 3-302, comments 1 and 4. By this standard, the court looks to the actual knowledge of the holder rather than to what the awareness of a prudent man would have been under the circumstances. As the rule is generally stated, evidence of bad faith on the part of the holder, and not merely proof of circumstances calculated to arouse suspicion, must be shown in order to defeat his recovery on the instrument. Aldrich v. Peckham, 74 N.J.L. 711 *27 (E. & A. 1907); Rice v. Barrington, 75 N.J.L. 806 (E. & A. 1908); Davis v. Clark, 85 N.J.L. 696 (E. & A. 1914); West Side Trust Co. v. Krug, 117 N.J.L. 102 (E. & A. 1936); Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 480 (1952), cert. denied 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952), reh. denied 344 U.S. 888, 73 S.Ct. 181, 97 L.Ed. 687 (1952). See Magee v. Badger, 34 N.Y. 247, 249 (Ct. App. 1866): "[The holder] is not bound, at his peril, to be upon the alert for circumstances which might possibly excite the suspicions of wary vigilance. He does not owe to the party who puts negotiable paper afloat, the duty of active inquiry, to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to diligence or negligence." Of course, insofar as it may contribute cumulatively, and in conjunction with other matters, to a finding of bad faith, evidence of suspicious circumstances, as well as carelessness or negligence in purchasing the instrument, may be relevant. Joseph v. Lesnevich, 56 N.J. Super. 340, 348-49 (App. Div. 1959).
It is well settled that mere knowledge on the part of the holder that the note received represents payment to the payee on an executory contract, which  at the time of the payee's negotiation  has yet to be executed and on which the payee might subsequently default, does not amount to a taking in bad faith. Hudson County Nat. Bank v. Alexander Furs, Inc., 133 N.J.L. 256 (E. & A. 1945); B.A.C. Corp. v. Cirucci, 131 N.J.L. 93 (Sup. Ct. 1944); First Nat. Bank of Springfield v. Di Taranto, 9 N.J. Super. 246, 252 (App. Div. 1950); U.S. v. Hansett, 120 F.2d 121, 122 (2 Cir. 1941); Fabrizio v. Anderson, 62 A.2d 314, 315 (D.C. Mun. Ct. App. 1948). As explained in Mitchell v. Holomon, 10 La. App. 219, 120 So. 672, 675 (Ct. App. 1929),
"Although it may be said that anyone who takes a note, which he knows was given in consideration of an executory contract, knows *28 that equities may arise between the drawer and the drawee, or that the consideration may fail, such knowledge does not prevent one from acquiring the note without being subject to the equities which may subsequently arise between the drawer and the drawee * * *."
Also see Annotation, 100 A.L.R. 1357, 1367-69 (1936); Britton, Bills and Notes (1943), § 108, p. 450. See, on the closely analogous question of what, by expression in the instrument itself, does and does not label the note as unconditional, New Jersey, Study of Uniform Commercial Code, supra, § 3-105. Nor does the fact that the payee has indorsed the instrument, as here, "without recourse," place subsequent holders on notice as to defenses existing between prior parties; the purpose of this qualified indorsement is simply to exempt the indorser from liability for payment on the note in the event it is dishonored at maturity. Werbel v. Mullen, 11 N.J. 40 (1952); Eastern Acceptance Corp. v. Kavlick, 10 N.J. Super. 253, 255 (App. Div. 1950); Packard v. Woodruff, 57 Pa. Super. 176 (Super. Ct. 1914).
The rationale of these holdings is simply that the free negotiability of paper should not automatically be deterred by the contingency of the payee's performance of a collateral agreement. To hold otherwise would, logically, lead to the conclusion that almost every instrument is defective and non-negotiable because of the possibility of a subsequent defense arising to free the maker from his obligation. The policy against construing otherwise negotiable documents as conditional, unless expressly so stated, has been aptly summarized in a parallel context:
"One function of negotiable instruments is to supplement the supply of currency. Another function is to represent the future payment of money. These currency and credit functions would be defeated by conditional promises, for costly and time consuming investigations would be made necessary by such promises, and circulation, therefore, would be impeded. Risks would be great and discount rates high. Substitutes for money must be capable of rapid circulation at minimum risks, and credit documents are feasible only when low discounting prevails. Obviously, then, negotiable instruments *29 must be unconditional to serve the purposes for which they were created." New Jersey, Study of Uniform Commercial Code, supra, § 3-105, comment 1.
Of course, should the potential indorsee have notice, at the time of purchase, that the contract has already been breached by the payee, the former is not a holder in due course as he has taken the instrument with "actual knowledge of the infirmity or defect." Prentice v. First Nat. Bank of Roff, 101 Okl. 232, 224 P. 963 (Sup. Ct. 1924); Alropa Corporation v. King's Estate, 279 Mich. 418, 272 N.W. 728 (Sup. Ct. 1937); Realty Bond & Share Co. v. Englar, 104 Fla. 329, 143 So. 152, 154 (Sup. Ct. 1932); cf. General Contract Purchase Corp. v. Moon Carrier Corp., 129 N.J.L. 431 (E. & A. 1943); Britton, Bills and Notes, supra, § 108, p. 451. See New Jersey, Study of Uniform Commercial Code, supra, § 3-304 (4) (b); 10 C.J.S. Bills and Notes § 330 (a), p. 829 (1938); 8 Am. Jur., Bills and Notes, § 400, p. 136 (1937).
Moreover, a distinction has been drawn between mere notice of an executory contract forming the consideration for the instrument and actual knowledge that negotiability of the note has been expressly conditioned between maker and payee on completed performance of the contract. First Nat. Bank of Springfield v. Di Taranto, supra (9 N.J. Super., at p. 252); Home State Bank of Royal v. Martin, 196 Iowa 1092, 195 N.W. 977, 980 (Sup. Ct. 1923); Cooke v. Real Estate Trust Co., 180 Md. 133, 22 A.2d 554 (Ct. App. 1941); First and Lumbermen's Nat. Bank v. Buchholz, 220 Minn. 97, 18 N.W.2d 771, 774 (Sup. Ct. 1945); Britton, Bills and Notes, supra, § 108, p. 452. The latter form of knowledge amounts to notice of an infirmity in the instrument impairing its negotiability  namely, that the promise to pay contained therein is not "unconditional." See R.S. 7:2-1 (II), 7:2-3. Note, again by way of pertinent analogy, the distinction made in New Jersey, Study of Uniform Commercial Code, supra, § 3-105, (2) (a), pp. 222-23, between "a mere recital of the existence of a separate *30 agreement, which * * * does not adversely affect negotiability, and a recital which shows that the executing parties intended the instrument to be burdened with the terms of another agreement."
We have examined the moving papers against the background of these principles, and will consider, in order, the purported issues raised therein:
(1) The factual dispute, revealed by answers to interrogatories, over when plaintiff was first approached by United as to purchase of the note, is patently irrelevant to the question of notice.
(2) Some conflict appears, from the affidavit of plaintiff's secretary-treasurer and its answer to interrogatories, as to whether it had knowledge of the general tenor of the contract at the time it took the note, i.e., whether it knew that the note was given in connection with an agreement for the installation of aluminum siding. Such knowledge, however, would not in itself constitute notice of any defects or conditions in the instrument. Eastern Acceptance Corp. v. Kavlick, supra. See discussion infra.
(3) While plaintiff denied advance knowledge of the date of the contract between United and the Calvettis, United answered an interrogatory concerning plaintiff's knowledge, "We believe so." The materiality of the surface factual issue here arguably raised, however, depends on whether plaintiff knew that the note was executed, as alleged, on Sunday, June 14, 1959. But United's answer to the interrogatories is to the effect that the contract was executed June 6, 1959 (defendants have not inserted the actual contract in their appendix). Consequently, the "We believe so" answer cannot support any inference that plaintiff knew the note was actually signed, as claimed by defendants, on Sunday, June 14, 1959.
(4) By virtue of United's admission that plaintiff had a history of dealings with it and had previously purchased "approximately 2,000 notes" from it, defendants spell out "another important area of factual controversy" and *31 claim they are clearly entitled to go to trial "to examine both the plaintiff and United Aluminum to determine the extent of plaintiff's knowledge of the type of delivery of notes to United Aluminum." Past dealings are not, however, relevant to the issue of notice by plaintiff  equivalent to bad faith  of a defect in the note given in the present transaction. Mutual Finance Corp. v. Dickerson, 123 N.J.L. 62 (Sup. Ct. 1939); see Annotation, 44 A.L.R.2d 8, 137-41 (1955).
(5) The fact of plaintiff's awareness of and the issue of its reliance upon a form warranty on the back of the note, to the effect that United "warrants that the undersigned has furnished and installed all articles and materials and has fully completed all work which constitutes a consideration for which this note was executed and delivered by the maker," is not material to its status as a holder in due course. The warranty was solely between the payee and purchaser of the note and in no way would carry notice of the defenses asserted by defendants. See Eastern Acceptance Corp. v. Kavlick, supra, in which the note involved contained a similar warranty.
(6) An inference of knowledge of the alleged breach of contract by United at the time plaintiff took the note is negated by defendants' own assertions of fact. The statement on behalf of New Jersey Mortgage that it received the note on June 16, 1959 is not disputed. Yet defendant Mary Calvetti affirmed that the work on her house by United was not commenced until June 18, 1959, and that the contractor was not notified of the unsatisfactory character of the installation until June 19. Hence, there was no breach of contract at the time the note was negotiated.
It is thus evident that the only possible issue of material fact to be found in the moving papers relates to plaintiff's actual knowledge of the asserted conditions attending defendants' delivery of the note to United. The conflicting positions are to be found in the affidavits, defendants affirming generally that plaintiff received the document "with knowledge that it had been delivered only conditionally and upon *32 terms which were not properly met by the payee * * *," and Baime, on behalf of New Jersey Mortgage, denying same. Was this broad affirmation by defendants, unsupported by more specific factual contentions or other indications of material and legally admissible knowledge on their part, sufficient to defeat a motion for summary judgment?
It is soundly established that where the movant demonstrates a prima facie right to summary judgment, the opponent of the motion is required to show by competent evidential material that a genuine issue of material fact exists. Robbins v. Jersey City, 23 N.J. 229, 241 (1957). Where means exist to make an affirmative demonstration as to the existence or non-existence of the fact, it is not sufficient that the opponent of the motion merely assert a conclusion opposite to the factual position of the movant. Heljon Management Corp. v. Di Leo, 55 N.J. Super. 306, 312 (App. Div. 1959). This is the philosophy implicit in R.R. 4:58-6, modeled on Fed. R. Civ. P., 56 (e), providing in pertinent part that "supporting and opposing affidavits shall be made on personal knowledge and shall set forth only facts which are admissible in evidence and to which the affiant is competent to testify."
The policy of this rule is to allow the affidavit to contain all evidentiary matter which, if the affiant were in court and testifying on the witness stand, would be admissible as part of his testimony. 6 Moore, Federal Practice, (1953) § 56.22, p. 2331. However, mere sworn assertions of ultimate fact supposedly based on information and belief, without revelation of the source of the information or any material basis for the belief, and without any supporting affidavits of persons having actual knowledge of the facts, will not effectively blockade issuance of summary judgment. Ash v. Frazee, 37 N.J. Super. 542 (App. Div. 1955). For example, we held in Heljon Management Corp. v. Di Leo, supra (55 N.J. Super., at p. 311), a mechanic's lien action, that defendant's affirmation that plaintiff had actual notice of the filing of a notice of intention did not "state or justify a conclusion that the matters contained therein were within *33 the personal knowledge of the affiant." And in Ocean Cape Hotel Corp. v. Masefield Corp., supra (63 N.J. Super., at p. 381), we declined to deny summary judgment merely on the basis of a broad allegation by plaintiff of guilty knowledge on defendant's part, where "no facts are set forth in the attached affidavits which in any way give support to this broad allegation."
Of course, where the fact in issue is the state of mind or actual knowledge of his opponent, obviously the affiant cannot, ordinarily, testify as to the ultimate fact of that person's knowledge; what he can be expected to do, though, is to recite or otherwise present, competently, primary facts adequate to give rise to an inference as to the ultimate fact. It is in this area of primary fact that defendants' affirmations lack substance and that their moving papers fail to establish sufficient foundation for a genuine trial conflict.
It is contended, however, that the thrust of our case law  where the fact sought to be placed in issue consists of knowledge or state of mind of an opposing party, and where proof of such knowledge or state of mind must depend on what the opponent can draw from the moving party on cross-examination  requires that summary judgment be denied and that a jury be permitted to determine the credibility of those whose knowledge or lack of same is questioned. Particular reliance is placed upon the Supreme Court's conclusion in Judson v. Peoples Bank & Trust Co. of Westfield, supra (17 N.J., at p. 76), that
"where the subjective elements of willfulness, intent or good faith of the moving party are material to the claim or defense of the opposing party, a conclusion from papers alone that palpably there exists no genuine issue of material fact will ordinarily be very difficult to sustain. The telltale factor of demeanor in the presence of the trier of fact often assumes such vital importance in such cases that the opposing party should generally not be denied the opportunity to have the moving party, or its officers, appear on the witness stand before the trier of fact."
We have held that where one side to a litigated controversy is heavily dependent upon the production by its *34 adversary of factual data, an application for summary judgment by the adversary on the basis of such data should be treated with great caution, considering the illuminative value of trial examination  from both a substantive and credibility viewpoint. Congdon v. Jersey Construction Co., 55 N.J. Super. 571, 580 (App. Div. 1959). This is the principle fostered by Judge Learned Hand in Bozant v. Bank of New York, 156 F.2d 787, 790 (2 Cir. 1946). And this guideline has been applied to the question of knowledge amounting to bad faith in a negotiable instruments case. Joseph v. Lesnevich, supra (56 N.J. Super., at pp. 350-351).
However, the application of this principle cannot in all instances involving knowledge or state of mind result in a denial of the summary judgment motion. This was recognized by the court in Judson v. Peoples Bank & Trust Co. of Westfield, supra (17 N.J., at p. 76), as the principal import of R.R. 4:58-7, providing that "[s]hould it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may deny the motion or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had, or may make such other order as is just." Thus, concluded the court, "the motion may be held and decided after the opposing party has availed himself of an opportunity to develop through affidavits or depositions material necessary to justify his opposition."
Implicit in the Judson court's analysis is a rejection of the apparently overbroad statement of the late Judge Frank in Arnstein v. Porter, 154 F.2d 464, 471 (2 Cir. 1946), to the effect that "where * * * credibility * * * is crucial, summary judgment becomes improper and a trial indispensable." Considerations of credibility, of course, do not really comprise issues of fact in and of themselves; they merely constitute one method of probing the veracity of an affirmative substantive statement, and if *35 that statement is material and genuinely in dispute, then the credibility aspect thereof must be carefully considered in determining whether to enter judgment without proceeding to trial in open court. Credibility, therefore, can only be "crucial" where the conflicting substantive factual positions are first present. See Asbill and Snell, "Summary Judgment Under The Federal Rules  When An Issue of Fact Is Presented," 51 Mich. L. Rev. 1143, 1154 (1953). But where a factual foundation for contradicting the movant's assertions or denials of knowledge is lacking, and where no sound evidentiary basis is indicated for impeaching the movant's credibility, the opponent of the motion is not entitled to proceed to trial merely on the faint hope that he may there be able to shake the movant's witnesses or otherwise uncover previously unexposed information.
In the case before us, affirmations were made on behalf of New Jersey Mortgage disclaiming any knowledge of the alleged conditions upon transfer of the note, and setting forth (in answers to interrogatories) the circumstances surrounding its acquisition of the instrument and the information received at that time from United. The counter-affidavits of the Calvettis, containing inadmissible conclusions of law as to plaintiff's status, and likewise incompetent (because not from personal knowledge) assertions of ultimate fact as to plaintiff's knowledge of the alleged defect, failed in substance to shape a genuine conflict. The information elicited on answers to interrogatories was, as developed infra, of minimal aid to defendants in this regard. The useful method of oral examination on depositions, which might well have given rise to direct substantive information as well as provided it indirectly by means of credibility impeachment, was not availed of by defendants.
This is not a situation such as existed in Joseph v. Lesnevich, supra, where the complaint stated primary facts indicating knowledge, on the part of the purchaser of the bonds, of extremely suspicious, almost incredible circumstances, where the purchaser's affidavit failed specifically to *36 deny these facts but merely asserted his good faith in conclusionary form, and where there was also considered in affidavit form a third party's statement corroborating the facts as set forth in the complaint. The instant case, in its present posture, affords no similar room for inferences of prima facie bad faith on the part of the holder of the note. All we are shown is an ordinary commercial financing transaction by a company in the legal business of discounting commercial paper. While the possibility of guilty knowledge on plaintiff's part cannot be categorically excluded, defendants, even on a motion for summary judgment, must provide at least some small ray of light indicating eventual illumination of that possibility as a probability. This they have not done. They are not "entitled to go to trial on the vague supposition that something may turn up." 6 Moore, supra, § 56.15, p. 2148.
Defendants argue that their reluctance to undertake the expense of depositions was entirely reasonable. They assert that they should not be penalized for utilizing interrogatories  "the poor man's method of discovery," they say  for this would be the equivalent of imposing a "means test" for determining successful resistance to a summary judgment motion. While defendants were certainly within their rights in attempting to expose vital facts solely by means of interrogatories, they may not complain of their failure adequately to examine the substantive contentions and test the credibility of plaintiff while at the same time refusing to utilize a recognizably effective method of doing so. See Dyer v. MacDougall, 201 F.2d 265, 269 (2 Cir. 1952), in which the issue, on review of summary judgment, was whether plaintiff might have obtained admissions from hostile witnesses which he would not have extracted on depositions he declined to take. Judge Learned Hand, speaking for the majority of the court, foresaw situations in which a witness on deposition might be so crafty, recalcitrant, and defiant that "the immediate presence of a judge in a court-room was likely to make him tell more." But he concluded that *37 the instant plaintiff "is in no position to invoke such a possibility for he has refused to try out these witnesses upon deposition, where he might discover whether there was any basis for supposing that awe of a judge was necessary to make them more amenable."
Our sympathies are properly directed towards the financially inadequate litigant, and the costs of deposition-taking are not unknown to us. But such concern may not be carried to the point of ordering plenary trial of a civil case otherwise resolvable on summary judgment  where important public questions are not involved  with the attendant expense to the State and to both parties, merely in order that the opponent of the motion be permitted to conduct essential examination which might, hopefully, produce information sufficient to defeat the motion. Cf. Evans v. Rohrbach, 35 N.J. Super. 260, 268-69 (App. Div.), affirmed, o.b., Evans v. Mathews, 19 N.J. 362 (1955); Van Dyke v. Carol Building Co., 36 N.J. Super. 281, 287-88 (App. Div. 1955); Hohl v. Mettler, 62 N.J. Super. 62, 69 (App. Div. 1960). Defendants have been afforded ample opportunity to demonstrate a genuine material conflict; and their failure to do so, or to take advantage of a method which might have enabled them to do so, must necessarily result in remitting them to their recourse against the third-party defendant, United.
Judgment affirmed.