102 N.J. Super. 43 (1968)
245 A.2d 223
FACTORS & NOTE BUYERS, INCORPORATED, A NEW JERSEY CORPORATION, PLAINTIFF,
v.
GREEN LANE, INC., A CORPORATION, AND GEORGE S. GOTTESMAN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 20, 1968.
*46 Mr. Marvin Schondorf for plaintiff.
Mr. Arthur R. Kobin for defendants (Messrs. Scerbo, Glickman and Kobin, attorneys).
YANCEY, J.C.C. (temporarily assigned).
This is a motion for summary judgment on three notes executed by defendant Green Lane, Inc. and signed by defendant George Gottesman, its secretary.
The notes were signed May 15, 1964 to the order of Comfort Cooling Co. Defendants claim in their affidavit by Gottesman that the notes were made with the express agreement that they would not be discounted "but would merely be exhibited for the purpose of obtaining supplies in order to complete the contract." Unfortunately, this was nowhere indicated on the instruments.
Defendants claim that on May 18, 1964, when the corporation learned of Comfort Cooling's intent to discount the notes to plaintiff, and again on May 19, Gottesman telephoned plaintiff, spoke to Alexander Matathias, its vice-president, and "advised him of Green Lane's position, and emphatically requested that the notes not be discounted." Nevertheless, plaintiff acquired the notes.
In an affidavit dated May 29, 1967 and filed in support of an earlier motion for summary judgment, which was later withdrawn, Matathias said that the notes were purchased on May 21, 1964. In the affidavit in support of this motion, *47 dated February 29, 1968, Matathias says the notes were purchased on May 15, 1964, thus, if true, sidestepping the issue of notice by Gottesman.
Defendants say Comfort Cooling did not complete performance and subsequently went bankrupt. They do not say how soon this was after the discounting and do not specifically allege plaintiff had knowledge of Comfort's financial troubles and of its incomplete performance. However, Gottesman does allege his "firm belief" that "plaintiff corporation had complete knowledge of the surrounding circumstances."
R.R. 4:58-6 states in pertinent part: "Supporting and opposing affidavits shall be made on personal knowledge and shall set forth only facts which are admissible in evidence and to which the affiant is competent to testify." Defenddant's "belief" is unsupported by factual allegations and thus I hold as a matter of law that it is insufficient to show a defense exists within the meaning of N.J.S. 12A:3-307(3)[1] or to create a genuine issue of a material fact. See N.J. Mtge. and Inv. Corp. v. Calvetti, 68 N.J. Super. 18, 19, 32-33 (App. Div. 1961).
As the Court of Errors and Appeals said in affirming a directed judgment in Hudson County National Bank v. Alexander Furs, Inc., 133 N.J.L. 256 (E. & A. 1945):
"The defendants had the burden of establishing proof which would have justified the court in submitting the facts to the jury to decide the factual issues raised by the defendants' pleadings. This the defendants failed to do and the court below properly directed a verdict in favor of the plaintiff. Polhemus v. Prudential Realty Corp., 74 N.J.L. 570; Trustees System Company of Newark v. Lisena, 106 N.J.L. 549." (at p. 260)
In N.J. Mtge. and Inv. Corp. v. Calvetti, supra, at p. 36, the court, in a case very similar to the case at bar, noted:
*48 "All we are shown is an ordinary commercial financing transaction by a company in the legal business of discounting commercial paper. While the possibility of guilty knowledge on plaintiff's part cannot be categorically excluded, defendants, even on a motion for summary judgment, must provide at least some small ray of light indicating eventual illumination of that possibility as a probability. This they have not done. They are not `entitled to go to trial on the vague supposition that something may turn up. 6 Moore, supra, § 56.15, p. 2148.'"
In the case at bar defendants apparently consider Mr. Gottesman's telephone calls to plaintiff not only a "ray of light" but a beacon. However, even if it be assumed that plaintiff purchased the notes on May 21, 1964 and that Gottesman's telephone calls to Mr. Matathias thus should be considered, I hold as a matter of law that the information that was communicated by Gottesman in those calls is ineffective to preclude plaintiff from becoming a holder in due course.
The only provision of N.J.S. 12A:3-304, "Notice to Purchaser," that might be applicable in the case at bar is section 4(b). It reads as follows:
"(4) Knowledge of the following facts does not of itself give the purchaser notice of a defense or claim

* * * * * * * *
(b) that it was issued or negotiated in return for an executory promise or accompanied by a separate agreement, unless the purchaser has notice that a defense or claim has arisen from the terms thereof;

* * * * * * * *"
The import of this provision is explained by paragraph 9 of the Comment following 3-304, as follows:
"Mere notice of the existence of an executory promise or a separate agreement does not prevent the holder from taking in due course, and such notice may even appear in the instrument itself. If the purchaser has notice of any default in the promise or agreement which gives rise to a defense or claim against the instrument, he is on notice to the same extent as in the case of any other information as to the existence of a defense or claim." (Emphasis added)
*49 The breach by Comfort Cooling of its agreement not to negotiate the notes would not give rise to a defense or claim against the notes but only against Comfort Cooling.[2] Thus, plaintiff took the notes "without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." N.J.S. 12A:3-302(1).
Since Gottesman phoned plaintiff only three and four days after the notes were executed to enable Comfort Cooling to complete its work, it is very unlikely that he could have considered Comfort Cooling in breach and so notified plaintiff.[3] Defendants do not allege that they told plaintiff that there had been failure of consideration on the part of Comfort Cooling.
Similarly there is no allegation in defendants' affidavit that plaintiff knew or suspected at the time it acquired the note that Comfort Cooling was on the verge of bankruptcy and would not be able to perform its agreement with defendants.
N.J.S. 12A:3-302(2) requires, in order for a holder of an instrument to be a holder in due course, that the holder also take the instrument "in good faith." "Good faith" is defined in N.J.S. 12A:1-201(19) as meaning "honesty in fact in the conduct or transaction concerned." In assessing whether a party to a transaction acted without good faith  *50 and thus in bad faith  the New Jersey courts have long adhered to the rule expressed in Rice v. Barrington, 75 N.J.L. 806 (E. & A. 1908):
"* * * proof of circumstances calculated merely to arouse suspicion will not defeat recovery on a negotiable note taken for value before maturity. Bad faith, i.e., fraud, not merely suspicious circumstances must be brought home to a holder for value whose rights accrued before maturity in order to defeat his recovery on a negotiable note on the ground of fraud in its inception or between the parties to it." (at p. 807)
See also Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 480 (1952), certiorari denied 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952), rehearing denied 344 U.S. 888, 73 S.Ct. 181, 97 L.Ed. 687 (1952); Joseph v. Lesnevich, 56 N.J. Super. 340, 348 (App. Div. 1959), and N.J. Mtge. and Inv. Corp. v. Calvetti, supra, at pp. 26-27. There is no indication that passage of Title 12A, the Uniform Commercial Code, changed the New Jersey approach to good faith. Cf. New Jersey Study Comment (1) (B) following N.J.S.A. 12A:3-302.
Any duty of inquiry devolves upon a purchaser "only to the extent that the failure to make inquiry indicates `a deliberate desire on his part to evade knowledge because of a belief or fear that investigation would disclose a vice in the transaction.' First National Bank of Blairstown v. Goldberg, 340 Pa. 397, 17 A.2d 377, 379 (Sup. Ct. 1941)." Joseph v. Lesnevich, supra, at p. 349.
With the assumption that plaintiff did not purchase the notes until after Gottesman's telephone calls still in effect, this court is of the opinion that the actual knowledge plaintiff had as to defendants misconstruing their legal position does not amount to bad faith in the acquisition of the notes.
Plaintiff also states in its affidavit that it purchased the notes "for a valuable consideration." Thus, I conclude that plaintiff took the notes for value, in good faith and without notice, and is a holder in due course within the meaning of N.J.S. 12A:3-302. As such it takes the notes *51 free from all claims to them and free from all defenses to them, except for certain "real defenses." N.J.S. 12A:3-305.
It could be inferred from defendants' affidavit that the agents of Comfort Cooling never intended to honor the collateral agreement not to negotiate the notes and thus defrauded defendants into signing the notes. Even so, this would not be "such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." N.J.S. 12A:3-305(2)(c). Defendants knew of the character and essential terms of the notes. That is why they did not want plaintiff to acquire the notes.
In fact, it appears that defendants themselves were participating in questionable activity. They created three notes that were perfectly negotiable on their face, with the intent and purpose that Comfort Cooling would hold them out as such. Defendants knew that a supplier would furnish materials to Comfort Cooling on credit while relying on the negotiability of the notes as security for payment. At the same time, however, defendants were party to an oral agreement, apparently secret, which, if honored, would have emasculated the negotiable character of the notes. As it turned out, Comfort Cooling did not live up to its part and defendants were, as they say, hoist by their own petard.[4] Thus, it may well be that even if defendants were not aware of the character and essential terms of the notes, they would be estopped from raising that defense. Cf. Universal C.I.T. Credit Corp. v. Cyr, 160 Me. 152, 200 A.2d 213 (Sup. Jud. Ct. 1964), in which the court held that homeowners who were defrauded by the payees in the execution of a note in connection with the purchase of home improvements but *52 who were not illiterate or inexperienced in business matters and would not have been confused if they had read what was so plainly stated on the note, were negligent as a matter of law in signing the note and were estopped from asserting fraud against a holder in due course.
Gottesman claims he signed the notes as secretary of the corporation and not in an individual capacity. However, N.J.S. 12A:3-403(2) states:
"An authorized representative who signs his own name to an instrument * * * (b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, * * *."
While there might be questions as to what, if anything, was established between the parties and as to whether the squiggle appearing under Gottesman's name could reasonably be understood to mean "secretary," there is another approach available. Gottesman also signed the notes on the back above any endorsement by Comfort Cooling. N.J.S. 12A:3-402 states:
"Unless the instrument clearly indicates that a signature is made in some other capacity it is an indorsement."
N.J.S. 12A:3-415(4) states:
"An indorsement which shows that it is not in the chain of title is notice of its accommodation character."
And N.J.S. 12A:3-415 states:
"(1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.
(2) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation."
*53 Thus, Gottesman is liable to plaintiff as an accommodation party. In addition, it appears that he is also jointly liable with Green Lane, Inc. as an individual maker.
Accordingly, plaintiff's motion for summary judgment against defendants is hereby granted.
NOTES
[1] N.J.S. 12A:3-307(3) states: "After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course."
[2] A distinction has been drawn between mere notice of an executory contract forming the consideration for the instrument and actual knowledge that negotiability of the note has been expressly conditioned between maker and payee on completed performance of the contract. See N.J. Mtge. and Inv. Corp. v. Calvetti, 68 N.J. Super. 18, 29 (App. Div. 1961), and cases cited therein. In the case at bar negotiability was not conditioned by the collateral agreement. It was supposed to be negated.
[3] It is well settled that mere knowledge on the part of the holder that the note received represents payment to the payee on an executory contract, which  at the time of the payee's negotiation  has yet to be executed and on which the payee might subsequently default, does not amount to a taking in bad faith. See N.J. Mtge. and Inv. Corp. v. Calvetti, 68 N.J. Super. 18, 27 (App. Div. 1961), and cases cited therein.
[4] The fact that a negotiable instrument is rooted in an illegal transaction or stems from a transaction prohibited by statute or contrary to public policy is no reason for refusing to enforce the instrument in the hands of a holder in due course. Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 485 (1952).